Janice POULIOT, et al., Respondents,

v.

Sharon Marie FITZSIMMONS, et al., petitioners, Appellants.

No. C3-96-1545.

Supreme Court of Minnesota.

July 30, 1998.

Terri Hummerding, Cardlin & Wright, Bloomington, for appellants.

Allan Shapiro, Allan Shapiro & Assoc., PA, Minneapolis, for respondents.

## OPINION

STRINGER, Justice.

On January 20, 1993, appellant Sharon Fitzsimmons lost control of her vehicle while driving in inclement weather along County Road 42 in Prior Lake, Minnesota and collided with respondent Janice Pouliot's vehicle that was stopped on the opposite side of the road. Pouliot was severely injured in the accident and sued Fitzsimmons for damages on a claim of negligence. The jury found that Fitzsimmons was not negligent in the operation of her vehicle and Pouliot's post-trial motion for a judgment notwithstanding the verdict (JNOV) was denied. The court of appeals reversed on the basis that the evidence of negligence was so overwhelming that reasonable minds could not differ. On review here, we reverse the court of appeals and reinstate the trial court's order denying JNOV.

The circumstances leading up to this unfortunate incident began at approximately 12:30 p.m., on January 20, 1993, when Pouliot left her office at Carver County Social Services, where she worked as a case aide in the child and family unit, to transport a child to a shelter in Burnsville, Minnesota. She first drove to the child's home in Chaska to pick up articles the child would need while in placement. She described the weather at that time as "a nice day," cloudy and breezy—then it started to sprinkle. Between 1:00 and 1:20 that afternoon she drove on U.S. Highway 212 to State Highway 101,

then to County Road 17 and onto eastbound County Road 42. As Pouliot turned onto County Road 42 she heard ice pellets strike her windshield. She tested her brakes and reduced her speed to between 40 to 45 miles per hour. Evidence at trial indicated that the temperature between the hours of 12:00 p.m. to 3:00 p.m. at the Minneapolis–St. Paul International Airport ranged from 20 to 26 degrees with freezing rain developing.

Pouliot first saw Fitzsimmons' vehicle approaching from the opposite direction on County Road 42. She noticed that it was fishtailing within its lane and recalled that it seemed to be moving "very quickly," so Pouliot pulled off the highway onto the right shoulder of the road. She believed that she came to a complete stop before being struck by the Fitzsimmons' vehicle, which skidded for about 1–1/2 blocks before it collided with her car. Pouliot, Fitzsimmons, and Fitzsimmons' daughter, a passenger in the Fitzsimmons' vehicle, were knocked unconscious on impact.

Fitzsimmons lived in Prior Lake at the time of the accident. Her daughter had been driving the family vehicle and had just returned home from Bloomington, a journey of approximately 25 minutes, moments before Fitzsimmons began driving that day. Fitzsimmons' daughter testified that she could not recall what she said to her mother about driving conditions but believed that she "mentioned something to the fact of the weather." On redirect examination the following exchange took place:

BY [PLAINTIFF'S COUNSEL]:

Q When you were asked whether there was any change in weather when you were driving with your mother, I believe—isn't it true that you had testified that right before you got home, it was either raining or snowing when you were driving the Jeep?

A Uh-huh, yes.

Q That's why you told your mother it was slippery?

A Yes.

Fitzsimmons, however, did not recall her daughter saying anything to her about road conditions. As the two women left the Fitzsimmons' house to get into the vehicle, Fitzsimmons noticed that the sidewalk was "just a little slippery." Fitzsimmons drove without incident for several miles before the collision occurred and had no trouble stopping at the intersection of State Highway 13 and County Road 42. She did not place the vehicle into four-wheel drive because she believed that "[t]he road conditions were fine," even though it was drizzling. She believes that she drove with her windshield wipers on. Fitzsimmons could not recall the speed she was driving while on County Road 42 but believed that because the roads were fine she could drive at the posted speed limit of 55 miles per hour. She was not aware of the freezing air temperature and did not become aware of the slippery conditions until her vehicle began to fishtail moments before the collision. Her vehicle began to skid just after she passed through the intersection at County Road 83, but having no recollection of whether the light was green or red, Fitzsimmons did not remember whether she was "slowly" accelerating back up to the speed limit from a complete stop or from a slow down. Fitzsimmons' daughter's only memory of events taking place near the intersection of County Road 83 and County Road 42 was "seeing the other car and having to turn around and grab [her] seat." When her vehicle began to skid, Fitzsimmons took her foot off the accelerator and tried to steer out of the skid, but without success. She did not recall her vehicle crossing the yellow line or the impact with Pouliot's vehicle.

Both Pouliot and Fitzsimmons agreed that there was no salt or sand apparent on County Road 42, nor visible evidence of ice or snow on the road, and the road was not slippery prior to the collision. The only testimony regarding the speed of the Fitzsimmons' vehicle when she lost control of her vehicle was from Pouliot, that it was moving "very quickly," and from Fitzsimmons, that she was accelerating from slowing down or stopping at the intersection of County Road 83 and County Road 42, a point approximately 2 blocks from the site of the collision. As to road conditions of County Road 42 before the collision, the testimony was not in conflict: the road was fine presenting no difficulty slowing down or stopping.

At the close of the evidence, Pouliot's motion for a directed verdict was denied as was her motion for JNOV after the jury returned its verdict finding Fitzsimmons to be free of negligence. The trial court reasoned that testimony at trial was sufficient to raise questions of fact regarding the causes and circumstances of the accident, and the evidence reasonably supported the jury's apparent conclusion that Fitzsimmons was operating her vehicle as a reasonable person would under the circumstances when the accident happened. The court of appeals reversed the trial court and granted JNOV on the basis that Fitzsimmons knew the sidewalk was slippery at home, saw the drizzle while driving, and was warned by her daughter that the roads were slippery. It concluded that "evidence of Fitzsimmons' causal negligence * * * is so overwhelming that reasonable minds could not differ." Because we believe that the court of appeals inappropriately substituted its judgment for that of both the jury and the trial court, we reverse.

■ When the trial court considers a motion for JNOV it must determine whether, viewing the evidence in the light most favorable to the nonmoving party, the verdict is manifestly against the entire evidence or whether despite the jury's findings of fact the moving party is entitled judgment as a matter of law. *Dean v. Weisbrod*, 300 Minn. 37, 41–42, 217 N.W.2d 739, 742 (1974). Therefore the standard of review is de novo. *Diesen v. Hessburg*, 455 N.W.2d 446, 449 (Minn.1990). Where JNOV has been denied by the trial court, on appellate review the trial court must be affirmed, if, in the record, "there is any competent evidence reasonably tending to sustain the verdict. 'Unless the evidence is practically conclusive against the verdict, [this court] will not set the verdict aside.'" *Rettman v. City of Litchfield*, 354 N.W.2d 426, 429 (Minn.1984) (quoting *Sandhofer v. Abbott–Northwestern Hospital*, 283 N.W.2d 362, 365 (Minn.1979)) (other citations omitted). The evidence must be considered in the light most favorable to the prevailing party and an appellate court must not set the verdict aside if it can be sustained on any reasonable theory of the evidence. *See Stumne v. Village Sports & Gas*, 309 Minn. 551, 552, 243 N.W.2d 329, 330 (1976).

Pouliot makes two principal arguments in support of her motion for JNOV: first that because Fitzsimmons violated three traffic statutes—one requiring her to keep to the right side of the road, another to pass to the right of on-coming traffic, and a third to slow down for weather or road conditions—the burden of production of evidence that she was operating her vehicle in a reasonable and prudent manner when the accident occurred shifted to Fitzsimmons to show evidence of justification for the violations. Second, she argues that given the wet roads and Fitzsimmons' failure to foresee poor road conditions there was not enough evidence as a matter of law to meet her burden of production of evidence as to justification.

■ Regarding Fitzsimmons' alleged traffic violations, the trial court instructed the jury on the motor vehicle traffic regulations regarding reasonable speed, reduced speed requirements, and passing to the right of on-coming traffic. There was no objection to the jury instructions.

We first consider the claim that Fitzsimmons violated subdivisions 1 and 2 of Minn. Stat. § 169.18, keeping to the right, and passing to the right. While the evidence is clear that these motor vehicle regulations were violated, the jury was also instructed to consider whether there was "reasonable excuse or justification" for the violations. Viewing the evidence in the light most favorable to the verdict, as we must, we hold that the jury could have reasonably inferred from the evidence that the deteriorating weather and road conditions due to freezing rain excused or justified Fitzsimmons' violation of section 169.18, subd. 1 and 2, and that the highway suddenly became slippery from freezing rain since both parties testified that just moments before the collision they noted that the roads were not slippery when they applied their brakes.

■ We next consider the claim that Fitzsimmons should have foreseen the deteriorating road condition and whether she violated Minn.Stat. § 169.14, subd. 1 and 3 by failing to slow down accordingly. Viewing the evidence in the light most favorable to the

verdict, the jury could have concluded that the slippery road conditions were not apparent to a reasonable driver. The testimony regarding the warning by Fitzsimmons' daughter as to the condition of roads was equivocal at best. Fitzsimmons testified that she had no recollection of a warning and her daughter testified that her memory of events from the day of the collision was vague. Fitzsimmons further testified that she had no trouble stopping at the intersection of State Highway 13 and County Road 42 and Pouliot testified that the roads were fine and she had no trouble pulling over and stopping on the shoulder of County Road 42 within 2 blocks of where Fitzsimmons lost control of her vehicle.

We have no difficulty agreeing with the trial court that the jury fulfilled its function as instructed by the court in rendering its verdict, and while another jury might have reached a different result, the evidence fell far short of the "practically conclusive" threshold of evidence required to grant JNOV. *See Sandhofer*, 283 N.W.2d at 365.

Reversed.

PAGE, Justice, (dissenting).

Ultimately, this case presents the question of whether, in January in Minnesota, with rain falling hard enough to require the use of windshield wipers and the temperature between 20 and 26 degrees, a driver has a duty to slow down to a reasonable and prudent speed in order to avoid endangering other people. To say, as a matter of law, that there is no such duty under these circumstances, is to send the message that Minn. Stat. § 169.14, subds. 1 and 3, have no meaning. Given my experience driving in Minnesota under similar conditions, that is simply the wrong message to send. Therefore, I dissent.